**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OHIO
EASTERN DIVISION**

| | | |
|---|---|---|
| CODY WEYAND, | ) | CASE NO. 4:13-CV-00414 |
| | ) | |
| Plaintiff, | ) | |
| | ) | MAGISTRATE JUDGE |
| v. | ) | VECCHIARELLI |
| | ) | |
| CAROLYN W. COLVIN, | ) | |
| Acting Commissioner of Social | ) | |
| Security, | ) | **MEMORANDUM OPINION AND** |
| | ) | **ORDER** |
| Defendant. | | |

Plaintiff, Cody Weyand ("Plaintiff"), challenges the final decision of Defendant,

Carolyn W. Colvin, Acting Commissioner of Social Security ("Commissioner"), denying

his application for a Period of Disability ("POD") and Disability Insurance Benefits

("DIB") under Title II of the Social Security Act, 42 U.S.C. §§ 416(I), 423 ("Act"), and

Supplemental Security Income ("SSI") under Title XVI of the Act, 42 U.S.C. §§ 423 and

1381(a).  This Court has jurisdiction pursuant to 42 U.S.C. § 405(g).  This case is

before the undersigned United States Magistrate Judge pursuant to the consent of the

parties entered under the authority of 28 U.S.C. § 636(c)(2).  For the reasons set forth

below, the Commissioner's final decision is AFFIRMED.

## I.  PROCEDURAL HISTORY

On June 30, 2009, Plaintiff filed applications for DIB, POD, and SSI and alleged

a disability onset date of April 10, 2009.  (Transcript ("Tr.") 14.)  The claims were denied

initially and upon reconsideration, and Plaintiff requested a hearing before an

administrative law judge ("ALJ").  (*Id.*)  On July 20, 2011, an ALJ held a video hearing.

(*Id.*)  Plaintiff participated in the hearing, was represented by counsel, and testified.

(*Id.*)  A vocational expert ("VE") also participated and testified.  (*Id.*)  At the hearing,

Plaintiff amended his alleged onset date to September 14, 2009.  (*Id.*)  On August 12,

2011, the ALJ found Plaintiff not disabled.  (Tr. 11.)  On January 17, 2013, the Appeals

Council declined to review the ALJ's decision, and the ALJ's decision became the

Commissioner's final decision.  (Tr. 1.)

On February 26, 2013, Plaintiff filed his complaint to challenge the

Commissioner's final decision.  (Doc. No. 1.)  The parties have completed briefing in

this case.  (Doc. Nos. 18 and 19.)

Plaintiff asserts the following assignments of error: (1) the ALJ failed to properly

consider Plaintiff's obesity when determining Plaintiff's residual functional capacity; (2)

the ALJ failed to give appropriate weight to the opinions of Plaintiff's treating physician;

and (3) Plaintiff's submission of material new evidence warrants remand.

## II.   EVIDENCE

### A.   Personal and Vocational Evidence

Plaintiff was born on July 8, 1971, and was 38-years-old on his alleged disability

onset date.  (Tr. 21.)  He had at least a high school education and was able to

communicate in English.  (*Id.*)  He had past relevant work as a dump truck

owner/operator.  (*Id.*)

### B.   Medical Evidence

#### 1.   Medical Reports

2

Plaintiff has been overweight most of his life.  (Tr. 18.)  He had lap band surgery in 2001 which did not help him lose weight.  (Tr. 240.)  Doctors' notes indicate that at an April 2009 hospital admission, Plaintiff had massive obesity, hypertension, congestive heart failure with mild left ventricular hypertrophy, diffuse hypokinesia, diastolic dysfunction, diabetes mellitus, restrictive airway disease, and probable obstructive sleep apnea.  (Tr. 267-281, 283-293, 312.)

On September 11, 2009, an x-ray of Plaintiff's lumbar spine showed a degenerated L1-2 disc which resulted in severe narrowing of the disc space and moderate degenerative arthritis.  (Tr. 336.)  On September 13, 2009, Plaintiff presented at the emergency room with complaints of back pain and left sided groin pain.  (Tr. 351.)  Plaintiff's history included a recent fall when trying to get into his truck and pain after twisting in the shower.  (*Id.*)  An exam showed tenderness in the lumbar areas, especially in the area of the lumbosacral joint.  (*Id.*)  The diagnostic impression was a lumbosacral strain.  (Tr. 352.)

In November 2009, Ghulam Aziz, M.D. – a specialist Plaintiff had been seeing for for sleep apnea – provided his treatment notes.  (Tr. 363.)  The notes reflect that Dr. Aziz began treating Plaintiff for sleep apnea and insomnia in April 2009.  (Tr. 366.)  On April 27, 2009, Plaintiff's chief complaint was that he frequently awoke from sleep and felt that his sleep was non-restorative.  (Tr. 375.)  After a sleep study showed severe obstructive sleep apnea disorder, Plaintiff began treating with continuous positive airway pressure ("CPAP"), a type of breathing therapy.  (Tr. 383.)  Plaintiff had nine other visits with Dr. Aziz from May 2009 through October 2009, in March 2010, and from December 2010 through April 2011.  (Tr. 363-384, 469-473, 479-491.)  Plaintiff's

3

physical examinations were largely normal except for decreased chest expansion due to obesity and decreased breath sounds.  (*Id.*)  At times, Dr. Aziz observed edema in the lower extremities.  (*Id.*)  He also noted that Plaintiff did not always use his CPAP machine, reporting fatigue and difficulty using it.  (*Id.*)

Mumtaz Husain, M.D., was Plaintiff's primary care physician from January 2009 through April 2011.  (Tr. 386-401, 456-463, 492-494.)  In January 2009, Dr. Husain saw Plaintiff for morbid obesity, congestive heart failure, hypertension, diabetes, gout, arthritis, back pain, bronchitis, and dermatitis, and educated Plaintiff on the importance of diet and exercise.  (Tr. 387-400.)  On April 10, 2010, Dr. Husain submitted a treating source statement.  (Tr. 444-445.)  Dr. Husain opined that Plaintiff is limited in lifting and carrying but did not assign specific weight limitations.  (Tr. 444.)  He indicated that Plaintiff could stand or walk for a total of five minutes in an eight-hour workday due to shortness of breath and fatigue.  (*Id.*)  He could sit for 15 minutes total in an eight-hour workday due to back pain.  (*Id.*)  He could rarely push/pull, climb, balance, stoop, crouch, kneel, or crawl.  (*Id.*)  He could occasionally reach, handle, feel, and perform fine and gross manipulation.  (Tr. 445.)  He must be limited in his exposure to moving machinery and temperature extremes.  (*Id.*)  According to Dr. Husain, Plaintiff would need to be able to sit/stand at will and would need more than the typical work breaks. (*Id.*)  Dr. Husain noted that Plaintiff had been prescribed a cane and a breathing machine and experienced moderate to severe pain.  (*Id.*)

In July 2010, Plaintiff was evaluated by George Eid, M.D., for bariatric surgery as a result of multiple unsuccessful attempts at non-surgical weight loss.  (Tr. 447-450.)  At

4

the time of the evaluation, Plaintiff measured at five feet, ten inches tall, and 547 pounds and had a BMI of 78.5.  (Tr. 447-448.)  A review of systems showed that Plaintiff was positive for fatigue and weakness, difficulty breathing, difficulty breathing with activity, leg cramps, muscle aches, and loss of strength.  (Tr. 448.)  Dr. Eid found that Plaintiff was at an extremely high level of risk for surgery because of his multiple co-morbidities.  (Tr. 449.)  Dr. Eid determined that Plaintiff would need to lose a significant amount of weight with a goal of 400 pounds before considering a gastric bypass.  (*Id.*)

Plaintiff continued treating with Dr. Husain for obesity, hypertension, and diabetes with severe hyperglycemia.  (Tr. 456-463.)  In April 2011, Dr. Husain submitted a second treating source statement.  (Tr. 474-475.)  Dr. Husain indicated that Plaintiff is limited to lifting and carrying up to ten pounds occasionally and five pounds frequently, standing or walking for one hour total in an eight-hour workday, and sitting for six hours total in an eight-hour workday and two hours at a time.  (Tr. 474.)  Dr. Husain opined that Plaintiff requires a sit/stand option, can occasionally balance and rarely climb, stoop, crouch, kneel, or crawl, can occasionally push/pull and perform fine or gross manipulation, and needs more breaks than the customary work breaks.  (Tr. 475.)  He also noted that Plaintiff had been prescribed a cane and breathing machine and experiences severe pain.  (*Id.*)

### 2.    Agency Reports

Prabhudas Lakhani, M.D., a state agency physician, examined Plaintiff in August 2008.  (Tr. 240-243.)  Plaintiff measured 72 inches tall and weighed 520 pounds.  (Tr. 241.)  Plaintiff complained of shortness of breath walking 100 feet due to obesity and

reported feeling tired all the time.  (Tr. 240-241.)  Plaintiff indicated that he could carry 20-30 pounds short distances.  (Tr. 241.)  Dr. Lakhani diagnosed extreme morbid obesity, shortness of breath secondary to morbid obesity, and back pain due to Plaintiff's weight.  (Tr. 242.)

In September 2008, W. Jerry McCloud, M.D., another state agency medical consultant, reviewed Plaintiff's record and rendered an opinion.  (Tr. 244-251.)  Dr. McCloud opined that Plaintiff was capable of lifting and carrying up to 50 pounds occasionally and 25 pounds frequently, standing and working for six hours total in an eight-hour workday, and sitting for six hours total in an eight-hour workday.  (Tr. 245.)  He could occasionally climb ramps or stairs, stoop, kneel, crouch, or crawl and never climb ladders, ropes, or scaffolds.  (Tr. 246.)

In September 2009, Dr. McCloud rendered a second opinion regarding Plaintiff's limitations.  (Tr. 355-362.)  Dr. McCloud opined that Plaintiff was capable of lifting and carrying up to 20 pounds occasionally and 10 pounds frequently, standing and walking for two hours total in an eight-hour workday, and sitting for six hours total in an eight-hour workday.  (Tr. 356.)  He could occasionally climb ramps or stairs, stoop, kneel, crouch, or crawl and never climb ladders, ropes, or scaffolds.  (Tr. 357.)  On reconsideration, two other state agency medical consultants – Dr. Bolz and Dr. Neiger – affirmed Dr. McCloud's 2009 opinion.  (Tr. 402, 403.)

## C.    Hearing Testimony

### 1.    Plaintiff's Hearing Testimony

Plaintiff was 40-years-old, six feet tall, and weighed 490 pounds at the time of his

6

hearing.  (Tr. 34.)  In the past two years, he had weighed between 500 and 520 pounds.  (*Id.*)  He testified that he is unable to work because of his obesity and limited mobility, back pain, congestive heart failure, diabetes, and sleep/breathing difficulties.  (Tr. 44-45, 48.)

Plaintiff testified that there is not much physical exercise that he can do.  (Tr. 35.)  He can walk to his vehicle, to his house, or to the bathroom, and he can sit in his chair and raise his feet.  (*Id.*)  His doctors told him to do step ups and walk more.  (Tr. 38.)  Plaintiff tries to do step ups but noted that "by the time I'm standing there trying to do them step ups, I got to find a place to sit down or something because I'm out of breath and . . . feel like I'm going to collapse."  (Tr. 39.)  He tries to do step ups at least once or twice a day.  (*Id.*)

Plaintiff's doctors have told him to consume no more than 1,200 calories per day.  (*Id.*)  Plaintiff stated that he usually complies with his diet but also noted that he does not like vegetables and still consumes high calorie foods like pasta and potatoes.  (Tr. 37.)  He cannot bring himself to eat vegetables because they turn his stomach.  (Tr. 39.)  Plaintiff had lap band surgery ten years ago but only lost about 80 pounds.  (Tr. 36.)  At the time of the hearing, he was in the process of trying to lose weight so that he could undergo surgery to help him lose weight.  (Tr. 36-37.)

Plaintiff testified that his nephew comes over to do his basic house cleaning and lawn work.  (Tr. 40.)  Plaintiff is able to shower and dress himself.  (Tr. 50.)  He can do his dishes and laundry and sometimes makes his bed.  (Tr. 51.)  It had been about a year since he vacuumed or swept and about two years since he mowed the lawn or shoveled snow.  (*Id.*)  Plaintiff's hobbies include TV and books.  (Tr. 52.)  Sometimes

7

his friend Krissy visits him.  (*Id.*)  Plaintiff has a valid driver's license and drives about five miles per day to visit his parents.  (Tr. 40, 41.)  The week of his hearing, he drove about 45 miles to see a doctor.  (Tr. 41.)   He did not stop along the way but felt like he needed to.  (*Id.*)

Plaintiff graduated high school, had one year of college, and went to truck driving school.  (Tr. 42.)  He is able to read and write English and do basic math.  (*Id.*)  Plaintiff had been self-employed as a dump truck driver for about 15 years but no longer works because of his weight.  (Tr. 44, 46.)  He can no longer climb into his dump truck.  (*Id.*)  Plaintiff testified that he can sit down for a period of time – about 20 or 25 minutes – as long as he can readjust himself or change position frequently.  (Tr. 46, 49.)   When questioned by his attorney, Plaintiff clarified that he did not think he could sit in a chair on a full-time basis for eight hours a day, five days a week.  (Tr. 52-53.)  "I can sit in, in my recliner for so long, and then my legs and that will, you know, feel like they're swelling up or something so I'll go in and lay in my bed for a half hour or so to try to stretch my legs out. . . ."  (Tr. 53.)  Plaintiff testified that he can stand up for about two or three minutes before needing to sit down and that he could walk about 10 or 15 feet.  (Tr. 47-48.)  He uses a cane for stability.  (Tr. 53.)   He tried to find seated jobs since he stopped working in 2009 but could not find any, although he never formally applied to any jobs.  (Tr. 47.)

Plaintiff testified that in addition to his obesity, his diabetes, pneumonia, pain in his feet and back, and sleep and breathing difficulties at night interfere with his ability to work.  (Tr. 48-49.)  Plaintiff takes medications but does not experience any side effects from them.  (Tr. 50.)

8

The day before his hearing, Plaintiff was in the hospital.  (Tr. 52.)  He signed himself out so that he could attend his hearing.  (*Id.*)

## 2. Vocational Expert's Hearing Testimony

Larry Bell testified as a VE at Plaintiff's hearing.  (Tr. 54.)  The ALJ told him to assume a hypothetical individual of the same age, education, and work experience as Plaintiff who attains the capacity to perform work primarily from a seated position but would be able to stand every 20 to 30 minutes for two to three minutes without going off task.  (Tr. 56-57.)  The individual is limited to occasional postural activities with no climbing of ladders, ropes, or scaffolds; is limited to jobs that can be performed while using a handheld assisted device required at all times while standing; can lift with his quadrilateral upper extremity; and must avoid all exposure to unprotected heights and hazardous materials.  (Tr. 57.)  The VE opined that the hypothetical individual would not be capable of performing Plaintiff's past relevant work as a dump truck owner/operator.  (*Id.*)  The VE further testified that the individual could perform jobs at the sedentary level, including an office receptionist (7,000 jobs regionally and 700,000 nationally) or a general sorter (550 jobs regionally and 50,000 nationally).  (*Id.*)

The VE opined that if an employee missed two or more days of work per month, the supervisory personnel would attempt an intervention to correct that and if that intervention was not successful then the employee would be terminated.  (Tr. 57-58.)  The VE also testified that if an employee was off task ten percent or more of the time, competitive work would be eliminated.  (Tr. 58.)

When asked by Plaintiff's counsel whether walking would consume more than an

9

hour per workday for someone working in one of the two jobs previously identified, the VE testified that it would not.  (Tr. 59.)  The VE also opined that all work would be eliminated if the hypothetical individual were limited to only occasionally performing fine manipulation or gross manipulation.  (*Id.*)

### III.    STANDARD FOR DISABILITY

A claimant is entitled to receive benefits under the Social Security Act when he establishes disability within the meaning of the Act.  20 C.F.R. § 416.905; *Kirk v. Sec'y of Health & Human Servs.,* 667 F.2d 524 (6th Cir. 1981).  A claimant is considered disabled when he cannot perform "substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months."  20 C.F.R. § 416.905(a).

The Commissioner reaches a determination as to whether a claimant is disabled by way of a five-stage process.  20 C.F.R. §§ 404.1520(a)(4) *and* 416.920(a)(4); *Abbott v. Sullivan*, 905 F.2d 918, 923 (6th Cir. 1990).  First, the claimant must demonstrate that he is not currently engaged in "substantial gainful activity" at the time he seeks disability benefits.  20 C.F.R. §§ 404.1520(b) *and* 416.920(b).  Second, the claimant must show that he suffers from a "severe impairment" in order to warrant a finding of disability.  20 C.F.R. §§ 404.1520(c) *and* 416.920(c).  A "severe impairment" is one that "significantly limits . . . physical or mental ability to do basic work activities."  *Abbot*, 905 F.2d at 923.  Third, if the claimant is not performing substantial gainful activity, has a severe impairment that is expected to last for at least twelve months, and the

10

impairment meets a listed impairment, the claimant is presumed to be disabled regardless of age, education, or work experience.  20 C.F.R. §§ 404.1520(d) *and* 416.920(d).  Fourth, if the claimant's impairment does not prevent him from doing his past relevant work, the claimant is not disabled.  20 C.F.R. §§ 404.1520(e)-(f) *and* 416.920(e)-(f).  For the fifth and final step, even if the claimant's impairment does prevent him from doing his past relevant work, if other work exists in the national economy that the claimant can perform, the claimant is not disabled.  20 C.F.R. §§ 404.1520(g), 404.1560(c), *and* 416.920(g).

## IV.   SUMMARY OF COMMISSIONER'S DECISION

The ALJ made the following findings of fact and conclusions of law:

1.   Plaintiff meets the insured status requirements of the Act through June 30, 2012.

2.   Plaintiff has not engaged in substantial gainful activity since September 14, 2009, the amended alleged onset date.

3.   Plaintiff has the following severe impairments: morbid obesity, congestive heart failure, diabetes, sleep apnea, and back pain.

4.   Plaintiff does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1.

5.   After careful consideration of the entire record, the undersigned finds that the claimant has the residual functional capacity to perform sedentary work as defined in CFR 404.1567(a) and 416.967(a) except he must be able to work primarily from a seated position and be able to stand every 20-30 minutes for 2-3 minutes (without going off-task), can stand or walk up to four hours total in an eight-hour workday, occasional postural activities, never climb ladders, ropes, or scaffolds, requires an assistive device when standing, and must avoid all exposure to unprotected heights and machinery.

6.   Plaintiff is unable to perform any past relevant work.

11

7.      Plaintiff was born on July 8, 1971, and was 38-years-old, which is defined as a younger individual age 18-44, on the alleged disability onset date.

8.      Plaintiff has at least a high school education and is able to communicate in English.

. . . . .

10.    Considering Plaintiff's age, education, work experience, and residual functional capacity, there are jobs that exist in significant numbers in the national economy that Plaintiff can perform.

11.    Plaintiff has not been under a disability, as defined in the Act, from September 14, 2009, through the date of this decision.

(Tr. 16-22.)

## V.    LAW & ANALYSIS

### A.    Standard of Review

Judicial review of the Commissioner's decision is limited to determining whether the Commissioner's decision is supported by substantial evidence and was made pursuant to proper legal standards.  *Ealy v. Comm'r of Soc. Sec.*, 594 F.3d 504, 512 (6th Cir. 2010).  Review must be based on the record as a whole.  *Heston v. Comm'r of Soc. Sec.*, 245 F.3d 528, 535 (6th Cir. 2001).  The court may look into any evidence in the record to determine if the ALJ's decision is supported by substantial evidence, regardless of whether it has actually been cited by the ALJ.  *Id.*  However, the court does not review the evidence *de novo*, make credibility determinations, or weigh the evidence.  *Brainard v. Sec'y of Health & Human Servs.*, 889 F.2d 679, 681 (6th Cir. 1989).

The Commissioner's conclusions must be affirmed absent a determination that the ALJ failed to apply the correct legal standards or made findings of fact unsupported

by substantial evidence in the record.  *White v. Comm'r of Soc. Sec.*, 572 F.3d 272, 281 (6th Cir. 2009).  Substantial evidence is more than a scintilla of evidence but less than a preponderance and is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.  *Brainard*, 889 F.2d at 681.  A decision supported by substantial evidence will not be overturned even though substantial evidence supports the opposite conclusion.  *Ealy*, 594 F.3d at 512.

> **B.    Plaintiff's Assignments of Error**
>
> > **1.    Whether the ALJ Failed to Properly Consider Plaintiff's Obesity When Determining His Residual Functional Capacity.**

Plaintiff argues that the ALJ did not consider his obesity in accordance with SSR 02-1p when determining his residual functional capacity ("RFC").  According to Plaintiff, "[t]he ALJ's decision isolated Plaintiff's multiple impairments without recognizing the debilitating and combined impact of Plaintiff's obesity in violation of SSR 02-1p and 20 CFR § 404.1523."  (Plaintiff's Brief ("Pl.'s Br.") at 11.)  The Commissioner responds that the ALJ adequately addressed Plaintiff's obesity at several points in his decision and properly considered its impact on Plaintiff's ability to function as required by SSR 02-1p.  For the reasons discussed below, Plaintiff's argument is not well taken.

The Social Security Administration ("SSA") considers obesity to be a medically determinable impairment.  S.S.R. 02-1p, Introduction, 2000 WL 628049, at *1 (S.S.A.).  Although the Listings previously included obesity as an impairment, the SSA deleted it in 1999, and added paragraphs to the prefaces of the musculoskeletal, respiratory, and cardiovascular body system listings that provide guidance about the potential effects obesity has in causing or contributing to impairments in those body systems.  *Id.*  The

13

SSA also recognizes that obesity may cause or contribute to mental impairments such as depression or the loss of mental clarity due to obesity-related sleep apnea.  S.S.R. 02-1p, Policy Interpretation Question 2, 2000 WL 628049, at *3.

Plaintiff contends that "the ALJ did not apply, and essentially gave lip service to the proposition that he was giving consideration to [Plaintiff's] obesity in accordance with SSR 02-1p."  (Pl.'s Br. at 10.)  But Social Security Ruling 02-01p does not mandate a particular mode of analysis of obesity, as it states only that obesity, in combination with other impairments, "may" increase the severity of the other limitations.  Bledsoe v. Barnhart, 165 F. App'x 408, 411-12 (6th Cir. 2006) ("It is a mischaracterization to suggest that Social Security Ruling 02-01p offers any particular procedural mode of analysis for obese disability claimants.").  Accordingly, to the extent that Plaintiff argues that the ALJ violated Social Security Ruling 02-01p by failing to perform an analysis of Plaintiff's obesity in a particular manner, this argument lacks merit.

Nevertheless, the ALJ must consider all of a claimant's impairments, severe and not severe, when assessing the claimant's RFC.  See 20 C.F.R. § 404.1545(e).  Here, Plaintiff contends that the ALJ merely mentioned that he considered Plaintiff's obesity at the relevant steps of the sequential analysis.[1]  This is not the case.  In fact, the ALJ

---

[1]     In finding that Plaintiff does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listings, the ALJ noted:

There is no specific listing that addresses obesity.  In accordance with SSR 02-1p, the undersigned has considered the effect of obesity on the claimant's other impairments at each step of the sequential evaluation process.  The findings set forth herein reflect the combined effect of the claimant's impairments, including obesity, on her [sic] functioning.

14

addressed Plaintiff's obesity several times throughout his decision, particularly when

discussing Plaintiff's ability to function.  For example, the ALJ noted:

> "The claimant testified that he currently weighs 490 pounds.  There is not much he can do to exercise except walk." (Tr. 18.)

> "[Plaintiff] has been overweight most of his life.  About two years ago, it got worse." (*Id.*)

> "[Plaintiff] uses a cane for stability.  He has been using a walker in his house." (*Id.*)

> "The claimant's medical records indicate that his primary impairment is severe morbid obesity with *associated conditions* of sleep apnea, cardiac impairment, decreased lung function, and joint pain."  (Tr. 19) (emphasis added).

> "At an August 2008 consultative examination, the claimant had normal strength and essentially normal range of motion. *There was some reduction in range of motion due to obesity.*" (*Id.*) (emphasis added).

> "[Plaintiff's] physical examinations are largely normal except for some decreased range of motion *due to obesity.*" (Tr. 20) (emphasis added).

> "While [Plaintiff's] back pain is certainly *exacerbated by his weight*, and he clearly cannot do work at heavier exertional levels, he remains capable of work at the sedentary exertional level with the additional restrictions listed above." (*Id.*) (emphasis added).

Thus, a review of the ALJ's decision shows that the ALJ did not, as Plaintiff's suggests,

address Plaintiff's obesity in isolation; rather, he considered its combined impact on

Plaintiff's other impairments when determining Plaintiff's RFC.

Furthermore, to support his argument that the ALJ failed to consider Plaintiff's

obesity, Plaintiff cites to several pieces of medical evidence from the record and then

concludes that "[i]t is apparent from the totality of this evidence that Mr. Weyand's

---

(Tr. 17.)

obesity has an exacerbating impact upon his other severe impairments which causes a greatly diminished residual functional capacity."  (Pl.'s Br. at 13.)  The evidence Plaintiff discussed, however, does not further Plaintiff's argument in any way.  In fact, nearly every exhibit to which Plaintiff referred was addressed by the ALJ in his step four analysis.  (Pl.'s Br. at 11-13, Tr. 17-21.)  Not only does the ALJ's analysis indicate that he considered the effect of Plaintiff's obesity on his ability to function, the ALJ's RFC finding accounts for Plaintiff's obesity by limiting him to sedentary work, giving him a sit/stand option, limiting his standing and walking to up to four hours total in an eight-hour workday, requiring that he have an assistive device when standing, and requiring that he never climb ladders, ropes, or scaffolds, and that he avoid all exposure to unprotected heights and machinery.  (Tr. 17.)

As the Commissioner correctly points out, a review of the ALJ's decision shows that the ALJ considered Plaintiff's obesity at step two of his analysis when he found it to be a severe impairment; at step three when he noted that there is no longer a Listing for obesity but that he considered obesity in conjunction with the relevant Listing for diabetes, cardiac impairments, and disorders of the spine; and at step four of his analysis when evaluating Plaintiff's testimony and credibility, weighting the medical evidence, and determining Plaintiff's RFC.  (Defendant's Brief ("Def.'s Br.") at 15, Tr. 16, 17, 18-20.)  For the foregoing reasons, Plaintiff's first assignment of error does not present a basis for remand.

### 2. Whether the ALJ Failed to Give Appropriate Weight to the Opinions of Plaintiff's Treating Physician.

Plaintiff argues that the ALJ violated the treating physician rule with respect to

16

Dr. Husain, Plaintiff's internist. On April 10, 2010, Dr. Husain completed a treating source statement providing his opinions regarding Plaintiff's physical capacity. (Tr. 444-445.) On April 13, 2011, Dr. Husain submitted an updated treating source statement with findings that differed slightly from his previous assessment. (Tr. 474-475.) In determining Plaintiff's RFC, the ALJ gave "very limited" weight to Dr. Husain's 2010 opinion and "greater" weight to his 2011 opinion. (Tr. 20.) Plaintiff challenges the ALJ's decision to assign less than controlling weight to Dr. Husain's April 2010 RFC assessment and rejecting parts of his 2011 assessment, arguing that the ALJ did not provide an adequate basis for discounting the earlier opinion and that the ALJ selectively adopted portions of Dr. Husain's later opinion that favored the ALJ's conclusions. For the following reasons, Plaintiff's arguments are without merit.

"An ALJ must give the opinion of a treating source controlling weight if he finds the opinion 'well-supported by medically acceptable clinical and laboratory diagnostic techniques' and 'not inconsistent with the other substantial evidence in the case record." *Wilson v. Comm'r of Soc. Sec.,* 378 F.3d 541, 544 (6th Cir. 2004) (quoting 20 C.F.R. § 404.1527(d)(2)) (internal quotes omitted). If an ALJ decides to give a treating source's opinion less than controlling weight, he must give "good reasons" for doing so that are sufficiently specific to make clear to any subsequent reviewers the weight given to the treating physician's opinion and the reasons for that weight. *See Wilson,* 378 F.3d at 544 (quoting S.S.R. 96-2p, 1996 WL 374188, at *5 (S.S.A.)). This "clear elaboration requirement" is "imposed explicitly by the regulations," *Bowie v. Comm'r of Soc. Sec.,* 539 F.3d 395, 400 (6th Cir. 2008), and its purpose is to "let claimants understand the disposition of their cases" and to allow for "meaningful review" of the

ALJ's decision, *Wilson,* 378 F.3d at 544 (internal quotation marks omitted).  Where an ALJ fails to explain his reasons for assigning a treating physician's opinion less than controlling weight, the error is not harmless and the appropriate remedy is remand.  *Id.*

Here, the ALJ did not err in assigning less than controlling weight to the 2010 opinion of Dr. Husain, as he provided "good reasons" for doing so.  In affording Dr. Husain's opinion "very limited" weight, the ALJ explained that the "extreme" limitations Dr. Husain identified "are not supported by the evidence of record or by the claimant's own testimony.  If this opinion were fully credited, it would indicate that the claimant spent nearly all day, every day lying down."  (Tr. 20.)  In Dr. Husain's 2010 opinion, he indicated, *inter alia*, that Plaintiff could stand or walk for a total of five minutes in an eight-hour workday, and he could sit for a total of 15 minutes in an eight-hour workday.  (Tr. 444.)  Therefore, the ALJ's observation was correct: Dr. Husain's opinion suggests that Plaintiff must spend seven hours and forty minutes of an eight-hour day lying down.  This is not consistent with the rest of the evidence, especially Plaintiff's testimony, which, as the ALJ noted, contradicts Dr. Husain's extreme findings.  Plaintiff testified that he can sit down for about 20 or 25 minutes as long as he can readjust himself or change position frequently.  (Tr. 46, 49.)  He admitted that the week of his hearing, he drove about 45 miles – without stopping – to see a doctor.  (Tr. 41.)  Plaintiff also testified that he can stand up for about two or three minutes before needing to sit down and that he could walk about 10 or 15 feet.  (Tr. 47-48.)  He is able to do his dishes and laundry and sometimes makes his bed.  (Tr. 51.)  Plaintiff also stated that he has searched for seated jobs.  (Tr. 47.)  Thus, a comparison between Plaintiff's view of his own abilities and Dr. Husain's conclusions indicates that Dr. Husain's assessment was

18

extreme and lacked support in the evidence.  The gross inconsistency between Dr. Husain's opinion and Plaintiff's testimony constitutes a satisfactory reason for the ALJ's decision to give less than controlling weight to Dr. Husain's 2010 opinion.

While the ALJ gave very limited weight to Dr. Husain's 2010 treating source statement, he gave greater weight to Dr. Husain's 2011 RFC assessment.  (Tr. 20.)  On April 13, 2011, Dr. Husain opined that Plaintiff could stand or walk for one hour total in an eight-hour workday, sit for six hours total in an eight-hour workday and two hours at a time, required a sit/stand option, and needed more breaks than the customary work breaks.  (Tr. 474-475.)  The ALJ noted that Dr. Husain's 2011 opinion was "more consistent with the claimant's treatment records than the April 2010 opinion."  (*Id.*)  Plaintiff takes issue with the ALJ's finding that, contrary to Dr. Husain's opinion, Plaintiff would not need to take excessive breaks during the workday if he were in a sedentary work environment, and that he would not require the restrictions in fine and gross manipulation that Dr. Husain suggested.  (Tr. 20.) The ALJ noted: "[T]here is little support in the evidence of record for restrictions in fine and gross manipulation.  Moreover, the undersigned finds that the claimant would not need excessive breaks if he were in a sedentary work environment for the reasons discussed above."  (Tr. 20.)  According to Plaintiff, "the ALJ has selected only portions of Dr. Husain's treating source statements and has failed to provide a sufficient explanation for the rejection of the treating source's opinion that Mr. Weyand requires extra rest breaks and upper extremity limitations."  (Pl.'s Br. at 17.)

The ALJ's explanation for discounting Dr. Husain's opinion of Plaintiff's fine and gross manipulation is lacking in specificity; the ALJ did not cite to specific evidence

19

conflicting with Dr. Husain's opinion but, rather, rejected it as lacking support in the record as a whole.  Nonetheless, the detailed analysis of Plaintiff's medical records that the ALJ provided just before discussing Dr. Husain's opinions supports the ALJ's conclusion that Plaintiff is not as limited in the use of his upper extremities as Dr. Husain opined.  *See* Tr. 17-21.  Furthermore, Plaintiff points to no evidence in the record showing that the ALJ was incorrect in finding that Dr. Husain's opinion was inconsistent with the rest of the evidence, nor did Dr. Husain indicate in his treating source statement the medical findings that supported his assessment.  (Tr. 475.)  Thus, even if the reasons the ALJ gave for giving Dr. Husain's opinion little weight were not "good" reasons, remand would not be necessary.  If an ALJ does not give good reasons for rejecting the opinion of a treating source, reversal and remand may not be required if the violation is *de minimis*.  *Hall v. Comm'r of Soc. Sec.*, 148 F. App'x 456, 462 (6th Cir. 2005) (citing *Wilson*, 378 F.3d at 547).  One example of a *de minimis* violation is "where the Commissioner has met the goal of 20 C.F.R. § 404.1527(d)(2)—the provision of the procedural safeguard of reasons—even though she has not complied with the terms of the regulation."  *Id.* (*quoting* Wilson, 378 F.3d at 547).  An ALJ may meet the goal of the good reasons requirement if she indirectly attacks both the supportability of the treating physician's opinions and the consistency of those opinions with the rest of the record evidence.  *See Nelson v. Comm'r of Soc. Sec.*, 195 F. App'x 462, 470 (6th Cir. 2006) (per curiam).

In *Nelson*, the court found that, although the ALJ failed to give good reasons for giving the opinions of two treating physicians little weight, the ALJ's analysis of the record evidence, including other opinion evidence contrary to the treating physicians'

20

opinions, adequately addressed the treating physicians' opinions by indirectly attacking both their supportability and their consistency with the other record evidence. *Id.* at 472. In other words, "[t]he ALJ implicitly provided sufficient reasons for not giving those opinions controlling weight, and indeed for giving them little or no weight overall." *Id.*

Although cases where the ALJ adequately addresses a treating physician's opinions through an indirect attack are rare, *id.*, the Court finds that this is such a case. The ALJ rejected the ALJ's opinion regarding fine and gross manipulation, because that opinion was without support from the record. (Tr. 20.) Plaintiff's record as a whole – including physician treatment notes as well as Plaintiff's own self-described abilities – do not support Dr. Husain's opinion regarding upper extremity limitations. As a result, the ALJ did not violate the treating physician rule by rejecting this particular part of Dr. Husain's 2011 RFC opinion.

Furthermore, the ALJ did not err by rejecting Dr. Husain's opinion that Plaintiff would require excessive breaks during an eight-hour workday. This Court finds that the only reasonable reading of the ALJ's decision is that when he relied on "the reasons discussed above" to reject Dr. Husain's opinion that Plaintiff would need excessive breaks, he was referring to the paragraph that immediately preceded his analysis of Dr. Husain's April 2010 and April 2011 opinions. (Tr. 20.) In that paragraph, the ALJ explained:

> While the above records do demonstrate some significant work-related limitations, they do not support work-preclusive limitations. The claimant lives alone and is able to manage his activities of daily living, drive daily, and do laundry. Moreover, his physical examinations are largely normal except for some decreased range of motion due to obesity. An imaging study of his back showed degeneration at only

21

> one disc level.  While his back pain is certainly exacerbated
> by his weight, and he clearly cannot do work at heavier
> exertional levels, he remains capable of work at the
> sedentary exertional level with the additional restrictions
> listed above.  The claimant himself stated only that he
> would be "uncomfortable" if he had to sit for eight hours per
> day, five days per week.

(Tr. 20.)  This summary of Plaintiff's medical records supports the ALJ's conclusion that

Plaintiff's impairments would not require him to take excessive breaks during the

workday, as long as he is limited to work at the sedentary level and given a sit/stand

option.  Thus, the ALJ provided justifiable reasons for rejecting Dr. Husain's opinion that

Plaintiff would require more than the normal work breaks.  While Plaintiff and this Court

may have benefitted from the ALJ including a summary of the evidence in the same

paragraph as his discussion of Dr. Husain's opinions, substantial evidence supports the

ALJ's decision, and "[n]o principle of administrative law or common sense requires us to

remand a case in quest of a perfect opinion unless there is reason to believe that the

remand might lead to a different result."  *Shkabari v. Gonzales*, 427 F.3d 324, 328 (6th

Cir. 2005) (quoting *Fisher v. Bowen*, 869 F.2d 1055, 1057 (7th Cir.1989)).  *See also*

*Kobetic v. Comm'r of Soc. Sec.*, 114 F. App'x 171, 173 (6th Cir. 2004) (When "remand

would be an idle and useless formality," courts are not required to "convert judicial

review of agency action into a ping-pong game.") (quoting *NLRB v. Wyman-Gordon*

*Co.*, 394 U.S. 759, 766, n.6 (1969)).  Accordingly, Plaintiff's second assignment of error

does not present a basis for remand.

### 3.      Whether Remand is Appropriate to Consider Additional Evidence.

While the matter was pending at the Appeals Council, Plaintiff produced Exhibits

23F and 24F, consisting of medical records from Trumbull Memorial Hospital dated 7/18/11-7/19/11 (Tr. 495-527), and medical records from East Liverpool City Hospital dated 7/21/11-4/5/12.  (Tr. 529-539.)  The Appeals Council considered these records, but found they did not provide a basis for changing the ALJ's decision.  (Tr. 1-2.) Plaintiff argues that the Court should remand his case for further consideration of the records, because the records are new and material to a determination of disability.

Under 42 U.S.C. § 405(g), a court "may . . . remand [a] case to the Commissioner . . .  for further action by the Commissioner . . . and it may at any time order additional evidence to be taken before the Commissioner . . . , but only upon a showing that there is new evidence which is material and that there is good cause for the failure to incorporate such evidence into the record in a prior proceeding."  The party seeking remand under § 405(g) bears the burden of showing that remand is appropriate.  *See, e.g., Sizemore v. Sec. of Health & Human Servs.*, 865 F.2d 709, 711 (6th Cir. 1988).  Evidence is new only if it was "not in existence or available to the claimant at the time of the administrative proceeding."  *Foster v. Halter*, 279 F.3d 348, 357 (6th Cir. 2001) (internal quotation marks omitted).  "In order for the claimant to satisfy this burden of proof as to materiality, he must demonstrate that there was a reasonable probability that the [Commissioner] would have reached a different disposition of the disability claim if presented with the new evidence."  *Sizemore*, 865 F.2d at 711.

Here, there is little question that the medical records at issue are "new," as the records concern hospital admissions immediately preceding and immediately following

23

Plaintiff's hearing of July 20, 2011.[2]  Thus, the remaining question is whether the records are "material."  Plaintiff argues that the records are material because they "support Plaintiff's efforts to correct his obesity and his co-morbid difficulties because of his weight," and because they "further document Plaintiff's cardiac and respiratory difficulties and his uncontrolled diabetes, which could all impact his functional capacity and need to take extra rest breaks."  (Pl.'s Br. at 19.)  Furthermore, Plaintiff contends that the outcome of his case could reasonably have been different had the ALJ known that Plaintiff exhibited shortness of breath and tachycardia while undergoing a preoperative evaluation for possible bariatric surgery.  (Tr. 508.)  According to Plaintiff, this is evidence that the ALJ could have used in determining whether Plaintiff would require extra rest breaks even when sedentary.

Plaintiff has failed to persuade this Court that there is a reasonable probability that the ALJ would have found Plaintiff disabled had he considered the medical records documenting Plaintiff's admissions at Trumbull Memorial Hospital and East Liverpool City Hospital.  The hospital records from the days immediately preceding Plaintiff's hearing show an isolated incident of atrial fibrillation of unknown etiology that was quickly resolved.  (Tr. 510-511.)  The fact that Plaintiff voluntarily discharged himself

---

[2]     Plaintiff testified that he had been admitted to the hospital the day before his hearing, but that he had signed himself out in order to be present at the hearing.  (Tr. 52.)  Plaintiff was undergoing a pre-operative evaluation for possible bariatric surgery when he was sent to the emergency room due to shortness of breath and palpitations.  (Tr. 508.)  Plaintiff was admitted to Trumbull Memorial Hospital on July 18, 2011, for an episode of atrial fibrillation.  (Tr. 508, 530.)  He was admitted to East Liverpool City Hospital for five days on July 21, 2011, one day after his hearing, with complaints of difficulty breathing.  (Tr. 530.)

24

from the hospital and attended his hearing tends to show that the incident lacked

severity.  (Tr. 52.)  Records from the days immediately following Plaintiff's hearing

indicate that he returned to the emergency room with complaints of difficulty breathing.

(Tr. 530.)  Plaintiff was started on steroids, breathing treatments, and antibiotics, and

his bronchospasm was resolved to baseline status within a few days.  (*Id.*)  A chest ex-

ray showed no congestive heart failure, and an echocardiogram confirmed normal left

ventricular function.  (*Id.*)  Plaintiff did not display any evidence of atrial fibrillation.  (*Id.*)

      Plaintiff fails to show how evidence of two visits to the emergency room would

reasonably change the outcome of his case.  Plaintiff's first argument – that the new

records support Plaintiff's efforts to correct his obesity and his co-morbid difficulties

because of his weight – is not well taken, as the ALJ did not deny that Plaintiff sought to

correct his obesity with surgery.[3]  Plaintiff's second argument – that the hospital records

are material because they further document his cardiac and respiratory difficulties and

his uncontrolled diabetes – also fails, because the ALJ already considered those

impairments when determining Plaintiff's RFC, and Plaintiff has not shown how

evidence of two additional stays in the hospital that were prompted by difficulty

breathing would reasonably change the ALJ's decision.  At more than one part of his

discussion of Plaintiff's RFC, the ALJ acknowledged that Plaintiff has difficulty breathing

and uses a breathing machine.  (Tr. 19-20.)  Nonetheless, the ALJ found Plaintiff

capable of performing sedentary work primarily from a seated position.  (Tr. 17.)  Thus,

---

[3]     The ALJ noted, "[i]n July 2010, the claimant attended a bariatric
consultation. . . .  The physician concluded that he was at an extremely
high risk for surgery due to his high BMI and past medical history."  (Tr.
19.)

the records from Trumbull Memorial and East Liverpool City Hospital do not add any significant or material additional evidence.  Accordingly, Plaintiff cannot sustain his burden of demonstrating that the proffered evidence is material.  Because Plaintiff has not shown that the evidence is material, remand is inappropriate.

### VI.    CONCLUSION

For the foregoing reasons, the Commissioner's final decision is AFFIRMED.

**IT IS SO ORDERED**.


s/ *Nancy A. Vecchiarelli*
U.S. Magistrate Judge

Date: November 5, 2013

26